1    ROBERT G. DREHER
2    Acting Assistant Attorney General
     Environment and Natural Resources Division
3
4    LISA A. CHERUP
     Email: Lisa.Cherup@usdoj.gov          E-FILED 01/10/2014
5    Environmental Enforcement Section      JS-6
6    Environment and Natural Resources Division
7    U.S. Department of Justice
     P.O. Box 7611
8    Washington, DC 20044-7611
9    Pennsylvania Bar Number: 47737
     Telephone: (202) 514-2802 (LC)
10   Facsimile: (202) 514-6584
11   Attorneys for Plaintiff the United States of America
     (Additional counsel listed on next page)
12
13              IN THE UNITED STATES DISTRICT COURT
14           FOR THE CENTRAL DISTRICT OF CALIFORNIA

15   UNITED STATES OF AMERICA,        )
16                                     )
                    Plaintiff,         )
17         and                         )
18                                     )
19   STATE OF CALIFORNIA,              )
                                       )
20                 Intervenor-Plaintiff )    Civil Action No. 11-cv-08023
21         v.                          )     GHK (VBKx)
22                                     )
                                       )     CONSENT DECREE
23   MOTORSCIENCE ENTERPRISES,         )
     INC., MOTORSCIENCE, INC., and     )
24   CHI ZHENG,                        )
25                 Defendants.         )
26   ─────────────────────────────────)
27
28

1   KAMALA D. HARRIS
2   California Attorney General

3   ALLAN S. ONO
4   NOAH M. GOLDEN-KRASNER
    Email: Allan.Ono@doj.ca.gov
5   Email: Noah.GoldenKrasner@doj.ca.gov
6   Office of the California Attorney General
7   300 S. Spring Street, Ste. 1700
    Los Angeles, CA 90013-1230
8   California Bar Number: 130763 (AO)
9   California Bar Number: 217586 (NGK)
    Telephone: (213) 897-2604 (AO)
10  Telephone: (213) 897- 2614 (NGK)
11
12  Attorneys for Plaintiff-Intervenor the People of the State of California,
    ex rel. California Air Resources Board
13
14  JINGSONG CHEN
    Email: jschenlaw@yahoo.com
15  Law Office of Jingsong Chen, Esq.
16  17588 Rowland St., #228
    City of Industry, CA 01748
17  California Bar Number: 249378
18  Telephone: (626) 363-7353
    Fax: (626) 363-7399
19

20  Attorney for Defendants

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................. 2

II.     APPLICABILITY ................................................... 3-4

III.    OBJECTIVE.......................................................4

IV.     DEFINITIONS ................................................ 4-8

V.      COMPLIANCE REQUIREMENTS ........................... 8-23

    A.  No Mobile Source Work, Except in Compliance with Decree ........... 8

    B.  Compliance Requirements for All Mobile Source Work
        Involving Nonroad Vehicles or Nonroad Engines.................... 8-20

    C.  Notice of All Mobile Source Work Not Involving Nonroad
        Vehicles and Nonroad Engines ................................ 20-21

    D.  Notice of Formation of Companies ..................................21

    E.  Review of Deliverables.............................................. 22-23

VI.     CIVIL PENALTY ....................................... 23-25

VII.    DEFENDANTS' REPORTING REQUIREMENTS ........................ 25-28

VIII.   STIPULATED PENALTIES ...................................... 28-36

IX.     FORCE MAJEURE ...................................... 36-38

X.      DISPUTE RESOLUTION ...................................... 38-40

XI.     INFORMATION COLLECTION AND RETENTION .................. 41-43

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS.......... 43-44

XIII.   COSTS.............................................44

XIV.    NOTICES ...................................................45

XV.     EFFECTIVE DATE ...................................... 46-47

XVI.    RETENTION OF JURISDICTION ..................................47

XVII.   MODIFICATION ......................................47

XVIII.  TERMINATION ...................................... 47-48

i

| XIX. | PUBLIC PARTICIPATION | 49 |
| XX. | SIGNATORIES/SERVICE | 49 |
| XXI. | INTEGRATION | 50 |
| XXII. | FINAL JUDGMENT | 50 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA") filed a complaint in this action on September 28, 2011, alleging that Defendants MotorScience Enterprises, Inc., MotorScience, Inc. and Chi Zheng violated Sections 203(a) and 213(d) of the Clean Air Act (the "Act"), 40 C.F.R. §§ 7522(a) and 7524(d), and associated EPA regulations found at 40 C.F.R. Parts 1051 and 1068.

The United States' Complaint alleged that Defendants caused four of their clients to violate EPA regulations by Defendants' 1) failing to properly test emission data vehicles ("EDVs") for the clients in connection with Defendants' submission of Certificates of Conformity ("COC") applications to EPA, 2) failing to provide the clients with copies of the COC applications, and other documentation required to be kept, that Defendants submitted to EPA on behalf of the clients; 3) failing to create and maintain records on how durability mileage was accumulated on the EDVs in question in the COC applications; and 4) failing to maintain records on all maintenance performed on the EDVs in question in the COC applications.

Intervenor-Plaintiff the People of the State of California, ex rel. the California Air Resources Board ("ARB") filed a Complaint in Intervention which was approved by the Court on November 16, 2011. The Complaint in Intervention alleged that Defendants violated California Health and Safety Code section 43151, *et seq.,* California Code of Regulations, title 13, sections 1958, 1976, and 2410, *et seq.,* and California Air Resources Board regulations by, among other things, failing to properly test EDV emissions for their clients in connection with their submission of Executive Order ("EO") applications to ARB, by submitting false information in their EO applications, by failing to create, obtain or maintain records on the EDVs that they should have had tested for their clients, and by

1

failing to supply their clients with a copy of the EO application that they submitted to ARB on behalf of their clients and other records their clients are required to keep and maintain.

Defendants do not admit any liability arising from the transactions or occurrences alleged in the United States' Complaint or California's Complaint in Intervention.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of testimony at trial, without the adjudication or admission of any issue of fact or law except as set forth herein below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 203, 204, 205 and 213 of the Act, 40 U.S.C. §§ 7522, 7523, 7524, and 7547, and over the Parties.

2.      Further, the Court has supplemental jurisdiction over the California law claims alleged in the Complaint in Intervention pursuant to 28 U.S.C. § 1367(a) because the California claims are related to the federal claims and form part of the same case or controversy.

3.      Venue is proper in this District pursuant to Sections 204, 205, and 213 of the Act, 40 U.S.C. §§ 7523, 7524, and 7547, because the Defendants' principal place of business is in this District. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree

2

and any such action and over Defendants, and consent to venue in this judicial district.

4.      For purposes of this Consent Decree, Defendants agree that the Complaint and the Complaint in Intervention state claims upon which relief may be granted pursuant to Sections 203, 204, 205 and 213 of the CAA, 42 U.S.C. §§ 7522, 7523, 7524, and 7547, and California Health and Safety Code section 43151, *et seq.,* and California Code of Regulations, title 13, sections 1958, 1976, and 2410, *et seq.*

## II. APPLICABILITY

5.      The obligations of this Consent Decree apply to and are binding upon the United States, ARB, and, jointly and severally, upon each of the Defendants and any of their successors, assigns, or other entities or persons otherwise bound by law.  All references to "Defendants" shall refer to Defendants collectively and individually, unless otherwise specifically stated.

6.      The obligations set forth in this Consent Decree apply to Defendants' engagement in any Mobile Source Work, regardless whether Defendants form a new business or whether Defendants' business assets and/or operations relating to Mobile Source Work are transferred to another business.  Defendants shall provide notice of any new business in accordance with Paragraphs 19 and/or 20 of this Consent Decree.  Should Defendants intend to transfer business assets and/or operations relating to Mobile Source Work to another business, at least 30 days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee, and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed transfer agreement, to the United States and ARB in accordance with Section XIV of this Decree (Notices).

7.     Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, transferees or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  OBJECTIVE

9.     The objective of this Consent Decree is to bring Defendants into full compliance with Title II of the CAA and the regulations promulgated thereunder, and with Sections 43151- 43153 of the California Health and Safety Code, and the regulations promulgated thereunder and to resolve the claims in the Complaint and the Complaint in Intervention as provided herein.

### IV.  DEFINITIONS

10.     Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Affiliate"(or Affiliated as the context may require) means any Person who, directly or indirectly or through one or more intermediaries, owns or controls MotorScience Enterprises, Inc. ("MSE") and/or MotorScience, Inc. ("MS"), is owned or controlled by MSE,  MS, or Chi Zheng, or which is under

4

common ownership or control with MSE, MS, or Chi Zheng.  For purposes of this Consent Decree, and without limiting the foregoing definition, ABC Essentials, Inc. is an "Affiliate"of MSE and/or MS.

    b. "ARB" means the California Air Resources Board.

    c. "CAA" means the Clean Air Act, 42 U.S.C. §§ 7401- 7671q.

    d. "Carry Across COC Application" means a COC application other than a Carry Over Application that includes emission test data used previously in a COC application.

    e. "Carry Over COC Application" means a COC application (as described, for example, in 40 C.F.R. §1051.235(d)) that includes emission test data used in a  COC application by the same manufacturer for a  prior model year.

    f. "COC" means a certificate of conformity issued by EPA under the CAA, based on an applicant's submission and certification evidencing that an engine family meets all requirements of the CAA and implementing regulations for a specific model year.  Any requirements set forth in this Consent Decree with respect to COCs shall be deemed to also apply to Executive Orders.

    g. "COC Application" means the information regarding an engine family submitted to EPA to obtain a COC for that engine family, and includes (without limitation) a Carry Over COC Application and a Carry Across COC Application. Any requirements set forth in this Consent Decree with respect to COC Applications shall be deemed to also apply to Executive Order applications.

    h. "COC Holder" means the Person to whom a COC is issued.

    i. "Certification" refers to EPA's vehicle and engine certification program and/or ARB's vehicle and engine certification program.

j.    "Complaint" means the complaint filed by the United States in this action;

k.    "Complaint in Intervention" means the complaint in intervention filed by ARB in this action;

l.    "Consent Decree" or "Decree" means this Decree;

m.    "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

n.    "Date of Entry" means the date that the Court signs this Consent Decree and enters it as a judgment, following Plaintiffs' submission of a motion to enter the Consent Decree.

o.    "Date of Lodging" means the date that the Plaintiffs file the proposed Consent Decree with the Court, prior to having the proposed decree noticed in the Federal Register for public comments.

p.    "Defendants" means MotorScience, Inc., MotorScience Enterprises, Inc., and Chi Zheng.  References to "Defendants" in this Decree also includes a reference to each Defendant.

q.    "Emission Data Vehicle" and "EDV" mean a vehicle or engine that is tested for Certification, including, without limitation,  vehicles or engines tested to establish deterioration factors.

r.    "Effective Date" shall have the definition provided in Section XV.

s.    "Engine Family" means a group of vehicles or engines expected to have similar emission characteristics throughout their useful life. *See, e.g.*, 40 C.F.R. § 1051.230.

6

t.     "Executive Order" means an order issued by ARB's Executive Officer certifying emission related components or assemblies, including but not limited to vehicles, engines, aftermarket parts, and verified diesel emission control strategies (VDECS) for sale in California.  Any requirements set forth herein with respect to COCs and COC Applications shall be deemed to also apply to Executive Orders and Executive Order applications.

u.     "Facility" means any location at which one or more of the Defendants or their agents, contractors or Affiliates conducts Mobile Source Work.

v.     "Mobile Source Work" means any activity regulated under Title II of the CAA or Cal. Health and Safety Code Division 26, including but not limited to the manufacture, testing, importation, distribution, or sale of any vehicles, engines, aftermarket parts, fuels and/or fuel additives.  This term also includes causing another Person to engage in any activity regulated under Title II of the CAA or Cal. Health and Safety Code Division 26, including but not limited to any one or more of the above-listed activities, and providing consulting services to another Person in connection with such activities.

w.     "Model Year" means model year as defined, for example, in 40 C.F.R. § 1051.801.

x.     "Motor Vehicle" means any self-propelled vehicle designed for transporting persons or property on a street or highway.  42 U.S.C. § 7550(2).

y.     "Nonroad Vehicle" means a vehicle that is powered by a nonroad engine and that is not a motor vehicle or a vehicle used solely for competition.  42 U.S.C. § 7550(11); 40 C.F.R. § 1051.801.

z.     "Nonroad Engine" includes all internal combustion engines except motor-vehicle engines, stationary engines, engines used solely for

competition, or engines used in aircraft.  42 U.S.C. § 7550(10); 40 C.F.R. § 1051.801.

aa.    "Paragraph" means a portion of this Decree identified by an arabic numeral.

bb.    "Parties" means the United States, ARB, and the Defendants;

cc.    "Person" means any human, corporation, partnership, limited liability company, sole proprietorship, joint venture, or any formal or informal entity, organization, or association.

dd.    "Section" means a portion of this Decree identified by a roman numeral; and

ee.    "United States" means the United States of America, acting on behalf of EPA.

## V.   COMPLIANCE REQUIREMENTS

A.    <u>No Mobile Source Work, Except in Compliance with Decree</u>

11.    Chi Zheng, MotorScience Enterprises, Inc., and MotorScience, Inc. each certify that from the date of his/its signature until termination of this Decree pursuant to Section XVIII, he/it will not conduct any Mobile Source Work except in compliance with the terms of this Section of this Consent Decree.

B.    <u>Compliance Requirements for All Mobile Source Work Involving Nonroad Vehicles or Nonroad Engines</u>

12.    From the date of  Defendants' signatures until the Consent Decree's termination, before any of the Defendants conducts (or continues to conduct) Mobile Source Work involving Nonroad Vehicles or Nonroad Engines, such Defendant shall comply with the requirements set forth below, in Paragraphs 13–19, below.

13.    Defendants shall hire a Compliance Contractor and an Audit

8

Contractor in accordance with the hiring process set forth in Paragraph 14, below. Defendants shall perform no Mobile Source Work involving Nonroad Vehicles or Nonroad Engines except according to an EPA-approved Compliance Plan and Audit Program described below. Defendants shall bear all costs associated with the Compliance Contractor and the Audit Contractor, shall cooperate fully with the two contractors, and shall provide both contractors with unfettered access to any Facility, including all records, documents, vehicles, engines and equipment associated with the business.  The requirement to maintain a contract with the Audit Contractor shall continue a minimum of four years from the date the first quarterly report is submitted to EPA by the Audit Contractor, and shall continue thereafter, for the length of time EPA determines is necessary, after consultation with ARB, to ensure Defendants' compliance with applicable law, but in no event to exceed ten years total.  The requirement to maintain a contract with the Compliance Contractor shall continue for three years from the date of EPA's approval, in consultation with ARB, of the Compliance Plan.

     14.   Contractor Qualifications, Hiring, and Replacing

     a.   Prior to conducting or continuing to conduct any type of Mobile Source Work involving Nonroad Vehicles or Nonroad Engines, Defendants shall submit to EPA and ARB a list of six or more proposed consultants to serve as either the Compliance Contractor or the Audit Contractor, along with their qualifications and descriptions of any previous work or contracts entered into with any of the Defendants.  Each proposed consultant shall employ two or more registered professional engineers  with a specialization in engine and vehicle compliance with all aspects of applicable EPA regulations (and, where applicable, ARB regulations, if California sales are anticipated) covering the type(s) of Mobile Source Work that the Defendants propose they will conduct.  For example, if the

type of Mobile Source Work involves emission testing, consulting on emissions, or the preparation or submission of COC or EO applications, the candidates must have experience in: emissions testing in accordance with EPA and ARB regulations; maintenance and modifications of emission-related components of vehicles to ensure compliance with EPA and ARB emission standards; mileage accumulation on EDVs; and recordkeeping requirements contained in EPA and ARB regulations.

      b.    The proposed consultants shall not be present or past Affiliates, employees or contractors of any of the Defendants, or present or past employees of any contractor of any of the Defendants.  EPA, after consultation with ARB, shall approve or disapprove each proposed consultant on the list, which approval shall not be unreasonably withheld.  Should EPA approve none of the proposed consultants on the initial list, Defendants shall submit a new list of six or more candidates. Should EPA, after consultation with ARB, not approve any of the consultants on the revised list, Defendants shall continue to submit new lists until EPA approves two or more candidates.  Within 15 Days after receipt of EPA's approval of candidates, the Defendants shall select one consultant to serve as the Compliance Contractor and another consultant to serve as the Audit Contractor, and shall enter into the contracts described in Paragraphs 15 and 18, below.  The Compliance Contractor and Audit Contractor must not be an Affilate, as that term is defined in Paragraph 10.a, nor should they have a business relationship with one another.  In the event that any of the consultants approved by EPA are no longer available or willing to accept the work required by this Decree when notified of their selection, the Defendants shall select another EPA-approved contractor, and shall enter into the contract described in Paragraph 15 or 18, as appropriate, within 15 Days after receiving EPA's approval.

15.   <u>Duties of the Compliance Contractor</u> : The contract with the Compliance Contractor shall provide that the Compliance Contractor shall perform the following duties:

a.      Develop a draft Compliance Plan as detailed in Paragraph 16, below, with the Defendants' input, and timely submit it to EPA and ARB;

b.      Respond to all EPA comments and ARB comments on the draft Compliance Plan, modify the Plan accordingly, and resubmit the draft Plan, within 30 days of receiving comments;

c.    Once the Compliance Plan is approved, monitor the Defendants' compliance with the Compliance Plan, and annually train Defendants' employees or contractors on the Compliance Plan requirements for a minimum of three years from the approval date.

16.   <u>Compliance Plan</u>

a.      Any Compliance Plan required by this Decree shall require that Defendants:

i.      conduct, or cause to be conducted, all Mobile Source Work according to a detailed regimen designed to ensure compliance with all applicable law;

ii.      include provisions in any contracts (or other commercial correspondence) concerning their Mobile Source Work that Defendants must, before conducting Mobile Source Work, provide to their customers or obtain from their customers all information necessary for vehicle or engine compliance determinations;

iii.      provide to every Person involved in implementing the Compliance Plan training and resources to assist their implementation;

iv.      create and maintain records of all Mobile Source Work

11

according to an explicit protocol; and

        v.      prepare and submit an annual report as described in Section VII (Defendants' Reporting Requirements), below.

        b.      Any Compliance Plan required by this Decree for Mobile Source Work involving emission testing, consulting on emission testing, or the preparation or submission of COC applications or EO applications shall further require that:

        i.      prior to the submission of any COC application to EPA in which Defendants have had any involvement in preparing or reviewing, the Compliance Contractor shall review each draft COC application for consistency with the EPA-approved Compliance Plan, and shall make recommendations to Defendants,  if necessary, to ensure consistency with the Compliance Plan.

        ii.      Defendants follow a vehicle and engine testing protocol (as set forth in the Compliance Plan) for all new vehicles and engines, all Carry Over situations, and all Carry Across situations, developed in accordance with applicable federal regulations (for example, 40 C.F.R. Parts 1051 and 1054), and, where necessary (i.e., for vehicles to be sold in California) State regulations found at California Code of Regulations, title 13, sections 1900 *et seq.,* 2400 *et seq.,* 2410, *et seq.,* 2430 *et seq.,* and all other applicable regulations, emission standards, and test procedures.

        iii.      an employee or contractor of Defendants physically shall inspect the largest-displacement vehicle or engine from the Engine Family for which Certification is sought to ensure that all emission-related parts conform to the COC application (and, in Carry Over or Carry Across situations, compare all emission-related parts of that vehicle with the corresponding emission-related parts of the EDV tested for the other COC application being used for the Carry Over or

12

Carry Across to ensure that the application is accurate);

iv.   in Carry-Over or Carry-Across situations, if the vehicle or engine to be certified includes a catalyst, Defendants shall obtain an actual production vehicle from the engine family (or families) that the COC applicant desires to have covered by the application, and Defendants shall disassemble the exhaust system attached to the production vehicle and verify that the exhaust system catalyst part number, dimensions, cell density, and metals loading are identical to the design specifications of the EDV described in the corresponding COC (where such information is provided).  If the inspected catalyst(s) is not identical in each of these aspects, Defendants shall not submit the application in question.  Further, Defendants shall ensure that all emission related parts of the vehicle are identical to those parts on the EDV;

v.   Defendants provide the results of each review to EPA (and where appropriate, ARB) in accordance with Section XIV. (Notices) of this Decree, prior to submission of the corresponding COC application;

vi.   for Carry-Over COC Applications, the protocol shall contain a demonstration that the Person who manufactured the prior Model Year Vehicle (or Engine) that is being used as the EDV is the same Person who manufactured the current vehicle (or engine) for which Certification is being sought;

vii.   Defendants follow a method of storing in a secure location and keeping track of all EDVs upon which Defendants have based an application for a COC, for any client, for a minimum of three years from the date of submission of the application to EPA;

viii.   Defendants follow a checklist to ensure that all records that are required to be generated and/or kept by the importer or certificate holder

13

under EPA and ARB regulations (for example, 40 C.F.R. §§ 1051.205 and 1051.250) are maintained by Defendants, at their Facility(ies), for the minimum period of time required by the applicable regulations;

        ix.    Defendants follow a method for ensuring that when an EDV is modified or adjusted before completing Certification testing (e.g. whether by installing a different part, or making adjustments on existing parts), that Defendants notify any foreign manufacturers that before shipping vehicles to the United States, all vehicles covered by that COC must have the same modification (or change) as occurred to the EDV which passed the emission test (hereinafter "Modification Notice"). This requirement applies regardless whether the EDV in question is for a "new" engine family, a "Carry-Across" engine family or a "Carry-Over" engine family. If the Modification Notice is in a language other than English, Defendants shall prepare a version of the Modification Notice in English at the same time they prepare the foreign language version, and shall retain a copy on file of both versions of the Modification Notice until this Consent Decree is terminated;

        x.    Defendants follow a method for ensuring that when any maintenance is performed on an EDV prior to emissions testing, that Defendants, prior to submitting the COC application for that EDV, notify the manufacturer in writing ("Maintenance Notice") that instruction manuals for the vehicles or engines in question must be modified to advise owners to perform such maintenance;

        xi.    Defendants follow a plan and schedule for the Compliance Contractor to annually train (for at least three years from the Effective Date) Defendants' employees and contractors on how to comply with the Compliance Plan and applicable EPA and ARB regulations, applicable testing and

14

recordkeeping protocols.

xii.    Defendants shall keep a list of the EPA pre-approved independent laboratories or facilities used by Defendants for emissions testing.

xiii.    At the same time the Defendants submit a COC application to EPA, the Defendants shall provide to their client on whose behalf the application is submitted a complete, unredacted copy of the entire COC application package and all Certification and testing records and data associated with that COC application, along with a cover letter reminding the client to maintain the records for the period of time required by the applicable EPA regulations.

xiv.    Defendants shall contract with an independent laboratory pre-approved by EPA to conduct confirmatory emission testing on up to seven EDVs of EPA's choice in a calendar year.  EPA may, at its discretion, order such confirmatory emission tests.  Defendants shall provide any such emission test results to EPA no later than ten days after testing and in no event later than 60 Days after the date of the request.  A copy of any results exceeding applicable emission standards must be sent to EPA and, if applicable, ARB in accordance with Section XIV ("Notices") of this Decree. The tests must be performed in accordance with all applicable EPA and ARB regulations.

xv.    Any contract between Defendants and an emissions testing laboratory shall require the laboratory to adhere to the written testing and recordkeeping protocols in the Compliance Plan and in strict accordance with applicable federal regulations, and a copy of the approved Compliance Plan shall be provided to the laboratory in advance of entering into the contract. Any laboratory or Facility used by Defendants for emission testing must regularly participate in correlation studies with other laboratories.

xvi.   Defendants shall perform, and/or cause to be performed, all emissions testing in accordance with applicable federal and state regulations, and shall conduct their business in strict accordance with the Compliance Plan.

xvii.   Each client contract for any Certification or testing work shall include the following elements, and must be made available to the Audit Contractor, and provided to EPA and/or ARB upon request:

A.   a complete and accurate translation, if not in English;

B.   notification to the client of the client's recordkeeping responsibilities under applicable EPA and ARB regulations accompanied by a detailed list of recordkeeping requirements applicable to a COC holder.  This notification must state that this information "is being provided in accordance with a consent decree with the United States Environmental Protection Agency and the California Air Resources Board."

C.   a covenant that Defendants shall notify the client immediately if any modifications or adjustments are made to  an EDV that could affect emissions;

D.   a covenant that Defendants shall notify the client immediately of all maintenance performed on any EDV at any time;

E.   a covenant that Defendants shall provide the client with all records, data, and application(s) when the client's COC application(s) is (are) submitted to EPA; and

F.   a covenant that Defendants shall provide the client with any available records or data requested by the client no more than 15 Days after the client's request; and

xviii.  Until this Consent Decree is terminated pursuant to

16

Section XVIII, Defendants shall state prominently on any website that they maintain for any Mobile Source Work involving emissions testing, consulting, or preparing or submitting applications to EPA for COCs or to ARB for EOs that they will provide their clients with all records, data, and applications when the client's COC and/or EO application(s) is/are submitted to EPA and/or ARB.

17.   Defendants' Duty to Fully Comply with Compliance Plan

Defendants shall fully comply with any Compliance Plan developed and approved under this Decree.

18.   Duties of the Audit Contractor : The contract with the Audit Contractor shall provide that the Audit Contractor shall perform the following duties:

a.   Develop a draft Audit Program as detailed in Paragraph 19 to determine whether Defendants are in compliance, and remain in compliance, with each requirement set forth in Defendants' Compliance Plan;

b.   Submit the draft Audit Program to EPA and ARB for review within 60 Days from the day when the Audit Contractor is retained, and respond to all EPA comments and ARB comments on the draft Audit Program, modify the Program accordingly, and resubmit the draft Program, within 30 Days of receiving comments;

c.   Audit Defendants' Facilities (including computer systems, hard copy records, equipment, instrumentation, emission data vehicles or engines) in accordance with the Audit Program, at least once per calendar quarter, on a random, unannounced basis.  After four years' worth of quarterly Audit Finding Reports have been submitted to EPA under the approved Audit Program, if EPA in its unreviewable discretion after consultation with ARB determines that the audit findings demonstrate compliance with the approved Compliance Plan, the

17

frequency of the audits may change to every six months, or once per year, as EPA determines.  Such less frequent audits, however, shall still be conducted on a random, unannounced basis;

        d.      Prepare an "Audit Findings Report" for each reporting period, and submit to EPA and ARB within 45 Days of completing the on-site inspection, along with documents, photographs, videos, or other information to support the audit findings; and

        e.      Be available to consult with EPA and/or ARB upon request within twenty (20) Days.

      19.    <u>Audit Program</u>

        a.      Any Audit Program required by this Decree, regardless of the kind of Mobile Source Work for which it is required, shall require that the Audit Contractor:

            i.      audit the Defendants' business as described in Paragraph 19.c, above;

            ii.      review a representative portion of the Defendants' Mobile Source Work Involving Nonroad Vehicles or Nonroad Engines for compliance with the Compliance Plan and all applicable law;

            iii.      review Defendants' contracts, commercial correspondence, and all other records for compliance with the Compliance Plan and all applicable law; and

            iv.      prepare and submit an Audit Findings Report as described in Paragraph 19.d, above.

        b.      Any Audit Program required by this Decree for Mobile Source Work involving emission testing, consulting on emissions, or the preparation or submission of COC applications or EO applications shall further require that:

i.      the Audit Contractor audit the Defendants' business(es) as described in Paragraph 18.c, above.

ii.      at each audit, the Audit Contractor randomly selects for review a representative sample and number of COC applications submitted to EPA within the last four months for "new," "Carry-Over," and "Carry-Across" vehicles, to determine whether the Defendants complied with their approved Compliance Plan, and with all applicable EPA and/or ARB regulations.  This review shall include, but not be limited to:

A.      Inspection of the EDV associated with each application and comparison of that vehicle with the EDV description in the COC application;

B.      Review of all records related to the EDV history, the mileage accumulation, the emissions testing, and the test equipment, and notation of any discrepancies with the regulatory requirements;

C.      Corroboration of the raw emission test results and any calculation of useful life emission values shown in the COC application to EPA, and identification of any errors; and

D.      An inspection of the records that the Defendants maintain on the maintenance and modifications performed on the EDVs to ensure that the recordkeeping requirements in the Compliance Plan and in all applicable EPA regulations are being met, that such records were transmitted to the vehicle manufacturers, and that the vehicle manufacturers received the Modification Notices and the Maintenance Notices required by this Section of the Consent Decree;

iii.      If the Defendants own or operate any emissions testing equipment, such equipment  be inspected to ensure that it  is being maintained and

19

used in accordance with the testing protocol established in the approved Compliance Plan, and all applicable EPA and ARB testing regulations are being followed. (For example, for recreational vehicles and Highway Motorcycles, this would include, but not be limited to: 40 C.F.R. §§86.426-78, 86.427-78 , 86.528-78, 86.535-90, 86.536-78, 86.537-90, 86.540-90,  86.508-78, 86.509-90, 86.511-90, 86.513-94, 86.513-2004, 86.514-78, 86.516-78, 86.518-78, 86.519-90, 86.521-90, 86.522-78, 86.523-78, 86.524-78, 86.526-90, 86.530-78, 86.531-78, 86.532-78, 1051.243, 1051.501, 1065.405, and 1065.410).

        vi.    The Audit Contractor shall inspect copies of recent contracts (and modifications thereto) entered into between each Defendant and each of his/its clients, to ensure that the "required elements" for such contracts (set forth in Paragraph 16. b.xviii), appear in each contract; and

        v.    The Audit Contractor prepare an "Audit Findings Report" for each reporting period, and submit it to EPA and ARB as part of the annual report, along with all supporting documents, photographs, videos, or other information, supporting audit findings.

    C.    <u>Notice of All Mobile Source Work Not Involving Nonroad Vehicles and Nonroad Engines</u>

    20.    If at any time following the Date of Lodging any of the Defendants engages in any Mobile Source Work other than the types of Mobile Source Work described in Paragraph 12, that Defendant shall notify EPA and ARB in accordance with Section XIV (Notices) of this Decree, at least thirty (30) Days prior to commencing the business, and shall supply the following information. (Additionally, if on the Date of Lodging any of the Defendants has already commenced engaging in any Mobile Source Work, within seven (7) Days of the Date of Lodging, that Defendant (those Defendants) shall also notify EPA and

ARB in accordance with Section XIV (Notice), and shall supply the following information).

    a.    All names used by the business, the form of the business (i.e. corporation, partnership, sole proprietorship, joint venture, etc.), and if the business is incorporated, the State of Incorporation and Date of Incorporation;

    b.    All addresses (physical addresses, website addresses and/or email addresses) at which that business conducts business, and all telephone numbers and all emails at which that business may be reached;

    c.    A full description of the purpose of the business;

    d.    A list of customers (or clients) of the business, and a description of their connection to the business;

    e.    A list of the employees or contractors working for the business; and

    f.    If the business is a corporation, the names of all officers and shareholders

D.    <u>Notice of Formation of Business Entities</u>

21.    In accordance with Section XIV ("Notices") of this Decree, Defendants shall provide EPA and ARB at least ten (10) Days notice before forming any business in the United States related to Mobile Source Work. This notice must be in writing and must include the name and contact information of the proposed business, its legal form (e.g. corporation, limited liability company, partnership, etc.), all Persons affiliated with the proposed business and a reasonably detailed description of the purpose of the proposed business. If the new business will be a corporation, the names and contact information of the proposed officers and shareholders of the business shall be supplied.

E.     Review of Deliverables

22.     After review of any draft plan or other item that is required to be submitted and approved pursuant to Section V of this Consent Decree, EPA, after consultation with ARB, shall in writing:

a.     approve the submission;

b.     approve the submission upon specified conditions;

c.     approve part of the submission and disapprove the remainder;

or

d.     disapprove the submission.

23.     If the submission is approved pursuant to Paragraph 22.a, Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 22.b or 22.c, Defendants shall, upon written direction from EPA, after consultation with ARB, take all actions required by the approved plan, report, or other item that EPA, after consultation with ARB, determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section X of this Decree ("Dispute Resolution").

24.     If the submission is disapproved in whole or in part pursuant to Paragraph 22. c or 22.d, the Defendants shall, within thirty (30) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, the Defendants shall proceed in accordance with Paragraph 23.

22

25.     As provided in Paragraph 55 of this Decree, any stipulated penalties applicable to the original deliverable shall accrue during the thirty (30) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## VI. CIVIL PENALTY

26.     Defendants hereby agree to entry of a judgment against them, jointly and severally, in favor of the United States in the amount of two million, eight hundred forty thousand dollars ($2,840,000) for civil penalties for the violations of the CAA, and implementing regulations as alleged in the United States' Complaint and the two tables attached thereto.   The interest rate set in 28 U.S.C. § 1961, applies to this judgment.

27.     Defendants hereby agree to entry of a judgment against them, jointly and severally, in favor of Plaintiff-Intervenor, ARB in the amount of seven hundred ten thousand dollars ($710,000) for civil penalties for the violations of the California Health and Safety Code Division 26, and implementing regulations alleged in the State of California's complaint in intervention. The interest rate set in 28 U.S.C. § 1961, applies to this judgment.

28.     Each Defendant further agrees that within five (5) Days from the Date of Entry they, collectively, shall pay $24,000 to the United States, and within six months (*i.e.* 180 Days) of the Date of Entry, they, collectively, shall pay an additional $24,000 to the United States, in accordance with the payment instructions for the United States set forth in Paragraph 30, below.   These two

payments to the United States are <u>in addition to</u> the civil penalty judgment amount set forth in Paragraph 26, and are not in satisfaction of any portion of the judgment in Paragraph 26.  Should Defendants not  make  a timely payment, interest shall accrue on any unpaid amount at the rate specified in 28 U.S.C. § 1961, commencing on 181st day following the Date of Entry, and the per day stipulated penalties for late payment (or nonpayment) set forth in Section VIII shall apply.

29.     Each Defendant further agrees that within five (5) Days from the Date of Entry they, collectively, shall pay $6,000, and within six months (*i.e.* 180 Days) of the Date of Entry they, collectively, shall pay another $6,000 to ARB in accordance with the payment instructions set forth in Paragraph 31, below.  These two payments to ARB are <u>in addition to</u> the civil penalty judgment amount set forth in Paragraph 27, and are not in satisfaction of any portion of the judgment in Paragraph 27.  Should Defendants not make a timely payment, interest shall accrue on any unpaid amount at the rate specified in Cal. Code Civ. Proc. Section 685.010 commencing on the sixth Day from the Date of Entry, and the stipulated penalties for late payment (or nonpayment) set forth in section VIII shall apply.

30.     Defendants shall pay the amounts provided in Paragraph 28 above to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Central District of California, 312 North Spring St., Suite 1200, Los Angeles, CA  90012, (213) 894-2400.  At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States and State of California v. MotorScience Enterprises, Inc., et al*, and shall

reference the civil action number and the DOJ case number 90-5-2-1-10209, to the United States in accordance with Section XIV ("Notices") of this Decree; by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

31.    Payment to ARB shall be by check payable to the California Air Pollution Control Fund, and mailed to:

> Diane Kiyota
> Air Resources Board
> 1001 I Street
> Sacramento, CA 95814

32.    Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal or State income tax.   Further, the Civil Penalty to be paid under this Section is punitive in nature, and not compensation for pecuniary loss by Plaintiffs.

## VII.  DEFENDANTS' REPORTING REQUIREMENTS

33.    Defendants shall prepare and submit to EPA and ARB an annual report regarding their compliance with all Consent Decree requirements, by January 31st of the first year following the Effective Date of this Consent Decree, and each subsequent annual report by January 31st of the year following the year in question.    The annual report shall include all of the following information:

a.    If Defendants opt to not engage in any Mobile Source Work, Defendants shall include the following statement: "Defendants are not engaged in Mobile Source Work as defined in Paragraph 10.v. of the Consent Decree."

b.    If during the year in question, any of the Defendants has engaged in Mobile Source Work involving Nonroad Vehicles or Nonroad Engines,

the annual report shall describe the nature and scope of such activity, and shall name all businesses, real or fictitious, for whom such work was performed. Defendants shall state and document all income from such Mobile Source Work. Additionally, Defendants must include any information that must be provided under Section V ("Compliance Requirements") and the following information:

      i.    a list of every engine family for which Defendants submitted a COC application in the year in question that identifies each application that is a Carry Over COC Application or a Carry Across COC Application and identifies, as applicable, the COC Application from which emission data was carried over or carried across; and

      ii.    a list of every EDV tested by Defendants in the year in question, identified by vehicle identification number (or product identification number, as applicable), and the EDV's current location (which should be in a secure location readily accessible to Defendants, to the Compliance or Audit Contractors, and to EPA and ARB, upon request);

      iii.    a list of any noncompliance with this Consent Decree that occurred during the year in question;

      iv.    records of the training and resources provided to any Person regarding testing and recordkeeping protocols, including the date, duration, attendance, and copies of the training materials used;

      v.    a list of clients and Affiliated entities with a corresponding list of any business formed by Defendants' client or Defendants for the purpose of COC applications;

      vi.    copies of all contracts between Defendants and their clients, between Defendants and any third-party laboratory; and between Defendants and any contractor (other than the Compliance Contractor and Audit

26

1  Contractor) who is performing any work for Defendants related to their compliance

2  with EPA or ARB regulations;

3              vii.    copies of all business formation documents by any of the

4  Defendants to any Secretaries of State in any of the United States; and

5  viii.    Audit Findings Reports for any audit conducted during the annual reporting

6  period.

7        c.    If during the year in question, any of the Defendants has

8  engaged in Mobile Source Work involving onroad vehicles or onroad engines, the

9  annual report shall describe the nature and scope of such activity, and shall name

10  all businesses, real or fictitious, for whom such work was performed.  Defendants

11  shall state and document all income from such work.  Additionally, Defendants

12  must supply the following information:

13

14              i.    a list of every engine family for which any of the

15  Defendants submitted a COC application in the year in question that identifies each

16  application that is a Carry Over COC Application or a Carry Across COC

17  Application and identifies, as applicable, the COC Application from which

18  emission data was carred over or carried across; and

19              ii.    a list of every EDV tested in the year in question,

20  identified by vehicle identification number, and description of the secure location

21  where the EDV is being stored; and

22              iii.    a list of clients and Affiliated entities.

23        34.    If the cause of any noncompliance with this Consent Decree cannot be

24  fully explained at the time the report is due, Defendants shall so state in the report.

25  Defendants shall investigate the cause of the noncompliance, and shall then submit

26  an amendment to the report, including a full explanation of the cause of the

27  violation, within 30 Days of the Day the Defendants becomes aware of the cause of

28

the violation.  Nothing in this Paragraph or the following Paragraph relieve Defendants of their obligation to provide the notice required by Section IX ("Force Majeure") of this Consent Decree.

35.    All reports shall be submitted to the persons designated in Section XIV ("Notices") of this Consent Decree.

36.    Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following Certification: "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

37.    The reporting requirements contained in this Section do not relieve Defendants of any reporting obligations required by the CAA or implementing its regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

38.    Any information provided pursuant to this Consent Decree may be used by the United States and/or ARB in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

VIII.  STIPULATED PENALTIES

39.    Defendants shall be liable for stipulated penalties to the United States and ARB for violations of this Consent Decree as specified below, unless excused

28

under Section IX ("Force Majeure").  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

40.     Late Payment of Civil Penalty:  If Defendants fail timely to make the payments to the United States and/or ARB as set forth in Paragraphs 28 and 29 respectively,  Defendants shall pay a stipulated penalty of $4,000 per Day, per government, for each Day that such payments to the United States and/or ARB is late.

41.     Failure Timely to Propose List of Potential Contractors, or a Revised List:  Defendants shall pay the following stipulated penalty for failing timely to submit the initial list of proposed consultants, or a revised list, as requested by EPA, as described in Paragraph 14 of this Decree:

| Penalty Per Day | Period of Noncompliance |
| --- | --- |
| $5,000 | 1st through 5th Day. |
| $10,000 | 6th through 10th Day. |
| $15,000 | 11th Day and beyond. |

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

42.     Failure Timely to Hire a Compliance Contractor or an Audit Contractor:  Defendants shall pay the following stipulated penalty for failing timely to hire a Compliance Contractor or an Audit Contractor in accordance with the timeframe set forth in Paragraph 14 of this Decree:

| Penalty Per Day, Per Contractor | Period of Noncompliance |
| --- | --- |
| $5,000 | 1st through 5th Day. |

29

|  |  |
|---|---|
| $10,000 | 6th through 10th Day. |
| $15,000 | 11th Day and beyond. |

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

43.  **Failure of Defendants' Contract with Compliance Contractor to Contain Provisions for Required Duties:**  Defendants shall pay the following stipulated penalty for failing to include in their contract with the Compliance Contractor each duty set forth in Paragraph 15 of the Decree:

> **Penalty Per Day, Per Duty Lacking in Contract**
> $5,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

44.  **Failure of Defendants' Contract with Audit Contractor to Contain Provisions for Required Duties:**  Defendants shall pay the following stipulated penalty for failing to include in their contract with the Audit Contractor each duty set forth in Paragraph 18 of the Decree:

> **Penalty Per Day, Per Duty Lacking in Contract**
> $5,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to the ARB.

45.  **Failure Timely to Submit a Draft Compliance Plan with Required Elements:** Defendants shall pay the following stipulated penalty for failing timely to submit the draft Compliance Plan in the timeframe set forth in Paragraph 15, or for submitting a draft Compliance Plan lacking one or more of the required elements set forth in Paragraph 16:

30

| Penalty Per Day Late | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 5th Day. |
| $10,000 | 6th through 10th Day. |
| $15,000 | 11th Day and beyond. |

Penalty Per Element Lacking in Submitted Draft

$10,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to the ARB.

46.   Failure Timely to Submit a Draft Audit Program Plan with Required Elements: Defendants shall pay the following stipulated penalty for failing timely to submit the draft Audit Program Plan in the timeframe set forth in Paragraph 17, or for submitting a draft Compliance Plan lacking one or more of the required elements set forth in Paragraph 19:

| Penalty Per Day Late | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 5th Day. |
| $10,000 | 6th through 10th Day. |
| $15,000 | 11th Day and beyond. |

Penalty Per Element Lacking in Submitted Draft

$10,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

47.   Failure to Comply with a Requirement in the Compliance Plan: Defendants shall pay the following stipulated penalty for failing to comply with each requirement set forth in the approved Compliance Plan.  For purposes of these stipulated penalties, noncompliance may be determined by EPA or ARB

31

independently, or after review of an Audit Report, or after consultation with the Audit Contractor:

<u>Penalty Per Requirement Violated</u>

1st through 5th violation of specific requirements     $4,000

6th through 10th violation of the specific requirement  $8,000

11th and beyond, violation of the specific requirement $12,000.

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

48.    <u>Failure to Perform Confirmatory Testing Requested by EPA:</u> Defendants shall pay the following stipulated penalty for failing to perform a confirmatory emission test on any vehicle, as referenced in Paragraph 16.b. xv of this Decree:

<u>Penalty per EDV Not Confirmatory Tested</u>

1st through 7th vehicle-        $5,000

7th through 14th vehicle-       $10,000

15th through 21st vehicle-      $15,000

22nd vehicle and beyond- $20,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

49.    <u>Failing to Supply COC Applicants with Required Records:</u> Defendants shall pay the following stipulated penalty for failing timely to supply a client on whose behalf they submit a COC application any required record:

<u>Penalty per Failure Timely to Supply to Client</u>

1st through 5th failure-        $2,000

6th through 10th failure-       $4,000

11th and beyond-        $8,000.

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

50.    Failure of Contracts with Clients to Contain Required Elements: Defendants shall pay the following stipulated penalties for failing to require that each contract with one of its clients contain each of the elements required in Paragraph 16 of this Decree:

Penalty per Element Lacking from Contract

$4,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

51.    Failure of Contracts with Other Emissions Testing Laboratories to Contain Required Elements:  Defendants shall pay the following stipulated penalty for failing to require that each contract with an emissions testing laboratory incorporates the requirements of Paragraph 16 of this Decree:

Penalty per Contract, per day

$ 5,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

52.    Failure Timely to Submit a Complete Annual Report:  Defendants shall pay the following stipulated penalties for failing timely to submit the annual report described in Section VII of this Decree:

Penalty per Day Deadline Missed

$1,000

Further, should an annual report omit one or more of the required elements described in Section VII of this Decree, Defendants shall be liable for the following stipulated penalty:

33

Penalty per Element Omitted

$2,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

53.     <u>Failure of Audit Contractor to Timely Submit Audit Findings Report:</u> Defendants shall pay the following stipulated penalty for the untimely submission of an Audit Report:

Penalty per Day Deadline Missed

$1,000

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

54.·    <u>Other Consent Decree Violations:</u> For any other violations of this Consent Decree not specifically mentioned in the preceding paragraph, the stipulated penalty shall be $1,000 per Day, per violation.·

80% of any stipulated penalty due under this paragraph shall be paid to the United States, and 20% to ARB.

55.     Defendants shall pay any stipulated penalty within 30 Days of receiving a written demand from the United States or ARB.  The United States·or ARB may in their unreviewable exercise of discretion, reduce or waive their respective stipulated penalties otherwise due to them under this Consent Decree. Stipulated penalties shall continue to accrue, once the demand is received, and during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties, or by a decision of EPA, after consultation with ARB, Defendants shall pay accrued penalties, together with interest, within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

34

b.     If the dispute is appealed to the Court and the United States and/or ARB prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be due, together with interest, within 60 Days of receiving the Court's decision or order.

c.     If any Party appeals the District Court's decision, and the United States and/or ARB prevail in whole or in part, Defendants shall pay all accrued penalties determined to be due, together with interest, within 15 Days of receiving the final appellate court decision.

56.     <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Section V ("Compliance Requirements") that have occurred prior to the Effective Date of the Consent Decree but after Defendants' signature, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

57.     Defendants shall pay stipulated penalties owing to the United States and ARB in the manner set forth and with the confirmation notices required by Section VI ("Civil Penalty"), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

58.   If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961(for the United States) and the rate specified in Cal. Code Civ. Proc. § 685.010 (for ARB), accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or ARB from seeking any remedy otherwise provided by law for Defendants' failure

35

to pay any stipulated penalties.

59.     The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or ARB for Defendants' violations of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the CAA or the California Health and Safety Code Sections 43151- 43153, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX.  FORCE MAJEURE

60.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

61.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA and ARB, in accordance with Section XIV ("Notice"), within 72 hours of when Defendants first knew that the event might cause a delay. Within seven days thereafter, Defendants shall provide in writing to EPA and

ARB an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

62.    If EPA, after a reasonable opportunity for review and comment by ARB, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by ARB, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

63.    If EPA, after a reasonable opportunity for review and comment by ARB, does not agree that the delay or anticipated delay has been or will be caused

37

by a force majeure event, EPA will notify Defendants in writing of its decision. If Defendants elects to invoke the dispute resolution procedures set forth in Section X ("Dispute Resolution"), it shall do so no later than fifteen (15) Days after receipt of EPA's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 60 and 61, above. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

64.   Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or ARB to enforce any obligation of Defendants arising under this Consent Decree..

65.   Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants sends the United States and ARB a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by

informal negotiations, then the position advanced by the United States, after consultation with the ARB, shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

66.     <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and ARB a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

67.     The United States, after consultation with ARB, shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position, and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants files a motion for judicial review of the dispute in accordance with the following Paragraph.  Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and ARB, in accordance with Section XIV (Notices) of this Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

39

68.     The United States, after consultation with ARB, shall respond to
Defendants' motion within the time period allowed by the Local Rules of this
Court.  Defendants may file a reply memorandum, to the extent permitted by the
Local Rules.

69.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review.
Except as otherwise provided in this Consent Decree, in any dispute brought under
this Section X pertaining to the adequacy or appropriateness of plans, procedures
to implement plans, schedules or any other items requiring approval by EPA under
this Consent Decree; the adequacy of work undertaken pursuant to this Consent
Decree; and all other disputes that are accorded review on the administrative
record under applicable principles of administrative law, Defendants shall have the
burden of demonstrating, based on the administrative record, that the position of
the United States (and/or ARB) is arbitrary and capricious or otherwise not in
accordance with law.

70.     Other Disputes.  Except as otherwise provided in this Consent Decree,
in any other dispute brought under this Section X, Defendants shall bear the burden
of demonstrating that its position complies with this Consent Decree and better
further the objectives of the Consent Decree. The invocation of dispute resolution
procedures under this Section shall not, by itself, extend, postpone, or affect in any
way any obligation of Defendants under this Consent Decree, unless and until final
resolution of the dispute so provides.  Stipulated penalties with respect to the
disputed matter shall continue to accrue from the first Day of noncompliance, but
payment shall be stayed pending resolution of the dispute as provided in Section
VIII ("Stipulated Penalties").  If Defendants does (do) not prevail on the disputed
issue, stipulated penalties shall be assessed and paid as provided in Section VIII.

## XI. INFORMATION COLLECTION AND RETENTION

71.     The United States, ARB, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

   a.     monitor the progress of activities required under this Consent Decree;

   b.     verify any data or information submitted to the United States or ARB in accordance with the terms of this Consent Decree;

   c.     obtain samples and, upon request, splits of any samples taken by Defendant(s) or its representatives, contractors, or consultants;

   d.     obtain documentary evidence, including photographs and similar data; and

   e.     assess Defendants' compliance with this Consent Decree.

72.     Upon request, Defendants shall provide EPA and ARB or their authorized representatives splits of any samples taken by Defendants.  Upon request, EPA and ARB shall provide Defendants splits of any samples taken by EPA or ARB.

73.     Until five years after the termination of this Consent Decree, Defendant(s) shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or

41

institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

74.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States and ARB at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or ARB, Defendants shall deliver any such documents, records, or other information to EPA or ARB.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant(s) assert such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant(s).  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

75.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendant(s) shall follow the procedures set forth in 40 C.F.R. Part 2.

76.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or ARB

42

pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant(s) to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

77.    This Consent Decree resolves the civil claims of the United States and ARB for the violations specifically alleged in the United States' Complaint and the two tables attached thereto, and ARB's Complaint in Intervention. The United States and ARB reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or ARB to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in this paragraph.   The United States and ARB further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, a Facility of any one or more of the Defendants, whether related to the violations addressed in this Consent Decree or otherwise.

78.    In any subsequent administrative or judicial proceeding initiated by the United States or ARB for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or ARB in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved

pursuant to Paragraph 77.

79.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and ARB do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, 42 U.S.C. § 7401, et seq., or Sections 43151 – 43153 of the California Health and Safety Code, or with any other provisions of federal, State, or local laws, regulations, or permits.

80.    This Consent Decree does not limit or affect the rights of Defendants, the United States or ARB against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

81.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. COSTS

82.    The Parties shall bear their own attorneys fees and costs of this action, except that the United States and ARB shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect   the civil penalties set forth in Paragraph 28 and 29, or any stipulated penalties due but not paid by Defendants.

## XIV.  NOTICES

83.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

DOJ

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-10209

– and –

EPA:

Air Enforcement Division
U.S. EPA Office of Enforcement & Compliance Assurance
Ariel Rios South Building, Room 1119B
Mail Code 2242A
1200 Pennsylvania, Ave., NW
Washington, D.C.  20004

To EPA:

Air Enforcement Division
U.S. EPA Office of Enforcement & Compliance Assurance
Ariel Rios South Building, Room 1119B
Mail Code 2242A
1200 Pennsylvania, Ave., NW
Washington, D.C.  20004

To the State of California:

1

2   <u>Office of the California Attorney General</u>

3   Allan Ono

4   Deputy Attorney General
300 S. Spring St. Ste. 1702

5   Los Angeles, CA  90013

6   Allan.ono@doj.ca.gov

7   – and –

8

9   Noah GoldenKrasner
Deputy Attorney General

10  300 S. Spring St. Ste 1702

11  Los Angeles, CA  90013

12  <u>To ARB:</u>

13

14  Diane H. Kiyota
Senior Staff Counsel

15  1001 I Street

16  Sacramento, CA  95814

17  <u>To Defendants:</u>

18

19  Chi Zheng
16814 Royal View Rd.

20  Hacienda Heights, CA  91745-4353

21  odes@yahoo.com

22

23  Jingsong Chen
Law Offices of Jingsong Chen

24  17588 Rowland St., #228

25  City of Industry, CA  91748
jschenlaw@yahoo.com

26  (626) 319-7566 (w)

27  (626) 363-7353 (w)

28

46

Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

84.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

85.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants hereby agree that he/they shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.  RETENTION OF JURISDICTION

86.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree and entering orders modifying this Decree, pursuant to Sections XVII and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

87.    The terms of this Consent Decree, including any attachments thereto, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

47

88.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X ("Dispute Resolution") of this Decree provided, however, that, instead of the burden of proof provided by Paragraph 69, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

89.     The Defendants may, at any time after fifteen years from the Effective Date of this Consent Decree, serve upon the United States and ARB, together with all necessary supporting documentation, a Request for Termination, stating that::

a.      Defendants have made the payments required by Section VI and any accrued interest imposed by this Consent Decree;

b.      Defendants have paid in full any stipulated penalties imposed by this Consent Decree;

c.      Defendants have provided all notices of engaging in other Mobile Source Work as required in Sections V ("Compliance Requirements") and VII ("Defendants' Reporting Requirements"), between the Date of Lodging and the time such termination is being sought;

d.      From the date of the first Audit Findings Report's submission to the present, the Audit Findings Reports have shown at least three consecutive years of compliance with the Compliance Plan;

e.      In all other respects Defendants have complied with the terms of this Consent Decree.

90.     Following receipt by the United States, the Office of the California Attorney General, and ARB of Defendants' Request for Termination, the Parties

48

shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with ARB, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

91.     If the United States, after consultation with ARB, does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X of this Decree. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

92.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

93.     Each undersigned representative of Defendants, ARB, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally

49

bind the Party he or she represents to this document.

94.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. True and correct copies of signed counterparts shall be deemed effective as originals for all purposes.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION

95.   This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

96.   It is hereby expressly acknowledged and agreed that this Consent Decree was jointly drafted in good faith by Plaintiffs and Defendants. Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning or interpretation of this Consent Decree.

## XXII.  FINAL JUDGMENT

97.   In approval and entry of this Consent Decree by the Court, this

50

1   Consent Decree shall constitute a final judgment of the Court as to the United

2   States, ARB, and Defendants.  The Court finds that there is no just reason for

3   delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P.

4   54 and 58.

5

6   Dated and entered this ⁹ day of  Jan.        , ~~2013.~~ 2014

7

8

9

10

11

GEORGE H. KING

12   CHIEF JUDGE,

13   United States District Court

14   For the Central District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51

Through their undersigned representatives, the Parties agree and consent to the entry of this Consent Decree subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 8/27/13

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: Aug. 5, 2013.

LISA A. CHERUP
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Post Office Box 7611
Washington, D.C.  20044
(202) 514-2802 (LC)
(202) 616-6584 (fax)
Lisa.Cherup@usdoj.gov

52

Through their undersigned representatives, the Parties agree and consent to the entry of this Consent Decree subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

Date: 7/24/13

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

Date: July 18, 2013

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

Date: July 18, 2013

PHILLIP A. BROOKS
Director, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

Date: July 18, 2013

EVAN M. BELSER
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

53

1    Through their undersigned representatives, the Parties agree and consent to the

2    entry of this Consent Decree subject to the public notice and comment provisions

3    of 28 C.F.R. § 50.7:

4

5    FOR PLAINTIFF-INTERVENOR, PEOPLE OF THE STATE OF CALIFORNIA,

6    EX REL. CALIFORNIA AIR RESOURCES BOARD

7

8                                                    Date:  7/8/2013

9    RICHARD W. COREY

     Executive Officer

10   Air Resources Board

11

12                                                   Date: 7/24/13

13   ALLAN S. ONO

14   NOAH M. GOLDEN-KRASNER

     California Attorney General's Office- Los Angeles

15   300 S. Spring Street, Ste. 1700

16   Los Angeles, CA  90013-1230

     Telephone:  (213) 897-2604 (AO)

17   Telephone:  (213) 897- 2614 (NGK)

18

19

20

21

22

23

24

25

26

27

28

                                    54

1   Through their undersigned representatives, the Parties agree and consent to the

2   entry of this Consent Decree subject to the public notice and comment provisions

3   of 28 C.F.R. § 50.7:

4

5

6   FOR DEFENDANTS MOTORSCIENCE, INC., MOTORSCIENCE
    ENTERPRISES, INC. AND CHI ZHENG

7

8   _____          Date: 6 · 11 · 2013

9   CHI ZHENG
    President and Chief Executive Officer

10  MotorScience, Inc.
    MotorScience Enterprises, Inc.

11

12

13  _____          6. 11.  2013
                                          Date:

14  CHI ZHENG

15

16

17

18

19

20

21

22

23

24

25

26

27

28